U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

SEP 28 2016

TONY R. MOORE CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| ROY JACKSON (#592233), Petitioner | CIVIL ACTION NO. 1:13-CV-2898-P |
| VERSUS | JUDGE DRELL |
| WARDEN, ET AL Respondent | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court is a petition for writ of habeas corpus (28 U.S.C. § 2254) filed by pro se Petitioner Roy Jackson ("Jackson") (#592233). Jackson filed several motions to stay his habeas proceeding pending the exhaustion of state court remedies. (Doc. 12, 15, 17, 20). Some of the motions were granted by electronic orders (Doc. 14, 19, 21), and some were deemed moot (Doc. 16, 23). The stay order has been in effect since the first electronic order was entered on February 20, 2014. (Doc. 14).

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court.

I.   Background

Jackson was convicted on November 14, 2011, pursuant to an Alford plea.[1] He was sentenced to forty years of imprisonment. (Doc. 1, p. 102). Jackson filed a motion

---

[1] See North Carolina v. Alford, 400 U.S. 25 (1970), where the U.S. Supreme Court ruled that a plea of guilty could be accepted even when the defendant asserts his innocence if the defendant intelligently concludes that it is in his best interests to enter a guilty plea and the record before the judge contains strong evidence of actual guilt.

to reconsider the sentence, which was denied on December 14, 2011. (Doc. 1, p. 201; Doc. 9, pp. 89, 91).

### A. Procedural History

#### 1. First Application for Post-Conviction Relief

Jackson states that he filed his first application for post-conviction relief on October 4 or 10, 2012. (Doc. 1. pp. 84, 141). On November 15, 2012, reasons for ruling were issued denying the application for post-conviction relief. (Doc. 1, p. 169). On December 12, 2012, Jackson filed a writ of review in the Louisiana Third Circuit Court of Appeal (No.: KH 12-1407), which was denied on June 14, 2013. (Doc. 1, p. 273). Jackson sought further review in the Louisiana Supreme Court, which was denied on January 27, 2014. See State ex rel. Jackson v. State, 2013-1698 (La. 1/27/14), 131 So. 3d 59.

#### 2. Motion for New Trial

Jackson filed a motion and supplemental motion for new trial. (Doc. 1, pp. 203-224, 225-230). The trial court set a hearing on the motion, but the hearing was subsequently cancelled, and relief was denied. (Doc. 1, p. 278).

#### 3. Second Application for Post-Conviction Relief

On August 16, 2013, Jackson filed a second application for post-conviction relief and hearing. (Doc. 1, pp. 100-125). That same date, the district judge issued an order scheduling a hearing. (Doc. 1, p. 126). The district attorney filed a response to the application. (Doc. 1, pp. 281-283). However, prior to the date of the scheduled hearing, the court denied the second application for post-conviction relief as

repetitive. (Doc. 1, p. 285). Because Jackson was not afforded the hearing, he filed a writ application in the Louisiana Third Circuit Court of Appeal (No: KH 13-1125). (Doc. 1, pp. 127-135). On February 21, 2014, the writ was denied because there was no error in the trial court's ruling. (Doc. 28, p. 49). The Louisiana Supreme Court denied writs as well. See State ex rel. Jackson v. State, 2014-0556 (La. 11/21/14), 152 So. 3d 892.

### 4. Motion to Vacate, Motion to Correct Illegal Sentence, Motion to be Provided with a Copy of Bill of Particulars and Plea Agreement

On November 22, 2013, Jackson filed a motion to vacate his sentence, to correct his sentence, to be provided with a copy of the bill of particulars in his case, and to be provided with a copy of his plea agreement. (Doc. 28, p. 46). The trial court noted that the sentence imposed resulted from a plea agreement, which provided that Jackson receive the maximum sentence available for forcible rape.

The court concluded that none of the grounds raised for vacating or correcting the sentence were meritorious. (Doc. 28, pp. 46-48). The court also denied the request for copies of the bill of particulars and plea agreement. (Doc. 28, pp. 46-48). Jackson applied for a writ in the Louisiana Third Circuit Court of Appeal, which was denied (No.: 14-KH-0018). (Doc. 28, p. 8). Jackson did not seek further review in the Louisiana Supreme Court. (Doc. 28, p. 8).

### 5. Motion to Vacate Involuntary and Unintelligent Guilty Plea

On September 22, 2014, Jackson filed a motion seeking to vacate his guilty plea based on erroneous advice from counsel. Jackson alleged that his attorney failed to disclose exculpatory evidence, and that his attorney failed to investigate

3

undisclosed exculpatory evidence. (Doc. 28, p. 50). The court found that Jackson previously raised this claim in his first and second applications for post-conviction relief, which were denied. (Doc. 28, p. 50). The court concluded that Jackson's claim was repetitive and denied the motion. (Doc. 28, p. 50).

Jackson sought a writ of review in the Louisiana Third Circuit Court of Appeal (No.: KH 14-1136). The appellate court concluded that the motion was really an untimely application for post-conviction relief, which raised issues that had been addressed by the court in State v. Jackson, 12-1407 (La.App. 3 Cir. 6/14/13) (unpublished opinion), State v. Jackson, 13-1125 (La.App. 3 Cir. 2/21/14)(unpublished opinion), State v. Jackson, 14-0017 (La.App. 3 Cir. 6/30/14) (unpublished opinion), and State v. Jackson, 14-399 (La.App. 3 Cir. 1/8/15) (unpublished opinion). (Doc. 28, p. 53).

### 6. Third Application for Post-Conviction Relief

Jackson filed another application for post-conviction relief on October 17, 2014. (Doc. 20, pp. 19-45). Jackson raised the following claims: (1) material evidence was not disclosed to Jackson in the pre-trial phase; (2) Jackson was denied his right to confront his accuser; (3) the court failed to disclose exculpatory evidence; and (4) Jackson was denied due process due to the failure of the court to inform him of the sex offender registry requirements. (Doc. 28, p. 44-45). The trial court denied the application. (Doc. 28, pp. 44-45).

7. <u>Petition for New Trial</u>

On February 9, 2015, Jackson filed a petition for new trial based on prejudicial error and defect in proceedings. The trial court denied the motion as untimely. (Doc. 28, p. 52). Jackson sought review in the Louisiana Third Circuit Court of Appeal. (Doc. 28, p. 54). The appellate court denied the writ application, noting that Jackson's motion should have been treated as an untimely application for post-conviction relief. (Doc. 28, p. 54). Additionally, the appellate court found that the bulk of Jackson's claims had previously been addressed by the court in <u>State v. Jackson</u>, 12-1407 (La.App. 3 Cir. 6/14/13) (unpublished opinion), <u>State v. Jackson</u>, 14-17 (La.App. 3 Cir. 6/30/14) (unpublished opinion), <u>State v. Jackson</u>, 14-399 (La.App. 3 Cir. 1/8/15) (unpublished opinion), and <u>State v. Jackson</u>, 14-134 (La.App. 3 Cir. 7/16/14) (unpublished opinion). (Doc. 28, p. 54).

8. <u>Habeas Corpus Petition and Motions to Stay</u>

Jackson filed the captioned matter on October 17, 2013, while he was seeking review on his first post-conviction application. (Doc. 1). Jackson raised the following grounds for relief: (1) Jackson received ineffective assistance of counsel when counsel: (a) failed to inform Jackson of the sex offender registration requirement; (b) failed to request a copy of the bill of particulars; (c) failed to read the plea agreement to Jackson and failed to have the judge read the plea agreement on the record; (d) failed to inform the trial judge that Jackson did not understand the elements of the charge and had not understood the consequences of the plea; (e) failed to file a motion to quash the indictment; (f) failed to inform Jackson what crime he would be pleading

guilty to prior to his court appearance; (g) failed to allow Jackson to view the plea agreement; (h) failed to disclose exculpatory evidence to Jackson and request a pretrial hearing regarding the evidence; (i) failed to inform Jackson of the facts of the crime and relevant law; (j) failed to engage effectively in the adversarial process; (k) failed to suppress inconsistent statements by the victim; (l) advised Jackson to enter a guilty plea to forcible rape; and (m) failed to obtain the prosecutor's files in a timely manner; (2) Jackson's plea was not knowing and voluntary, and the Louisiana courts erred in denying Jackson's requests for relief; and (3) Jackson's sentence was unlawful. (Doc. 7, pp. 13 – 23).

## II. Law and Analysis

Before reaching the merits of a habeas claim, a preliminary review of the pleadings and exhibits is conducted in order to determine whether the petitioner has exhausted all available state remedies prior to filing his petition in federal court, whether the petition is time-barred by the provisions of 28 U.S.C. § 2244(d)(1), and whether any of the claims raised are subject to the procedural default doctrine.

Additionally, Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts provides: "If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified." Kiser v. Johnson, 163 F.3d 326, 328 (5th Cir. 1999).

A.  <u>Stay</u>

Jackson's post-conviction applications and relevant writ applications are no longer pending. Additionally, as the Louisiana Third Circuit Court of Appeal has noted, Jackson's claims are repetitive and have been addressed by the Court. Jackson cannot demonstrate "good cause" for the failure to exhaust state court remedies at this point, and any unexhausted claims are "plainly meritless," as discussed below. <u>Rhines v. Weber</u>, 544 U.S. 269, 276 (2005). Therefore, the stay should be lifted.

B.  <u>Timeliness</u>

Based on the procedural history outlined above and the stay order that has been in effect, the instant Petition for Writ of Habeas Corpus is timely.

C.  <u>Exhaustion</u>

The exhaustion doctrine set forth in § 2254 requires that the state courts be given the initial opportunity to address and, if necessary, correct alleged deprivations of federal constitutional rights in state cases. See <u>Castille v. Peoples</u>, 489 U.S. 346, 349 (1989). The doctrine serves "to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." <u>Rose v. Lundy</u>, 455 U.S. 509, 518 (1982). Federal and state courts are equally obliged to guard and protect rights secured by the Constitution. Therefore, it would be inappropriate for a federal district court to upset a state court conviction without first giving the state court the opportunity to correct the alleged constitutional violation.

To have exhausted his state remedies, a federal habeas petitioner must have fairly presented the substance of his federal constitutional claims to the state courts.

See Nobles v. Johnson, 127 F.3d 409, 420 (5th Cir. 1997), cert. denied, 523 U.S. 1139 (1998). Exhaustion requires that any federal constitutional claim presented to the state courts be supported by the same factual allegations and legal theories upon which the petitioner bases his federal claims. See Picard v. Connor, 404 U.S. 270, 276 (1971). In addition, a federal habeas petitioner must fairly present his constitutional claims to the highest state court. See Richardson v. Procunier, 762 F.2d 429, 431 (5th Cir. 1985); Carter v. Estelle, 677 F.2d 427, 443 (5th Cir. 1982), cert. denied, 460 U.S. 1056 (1983).

Jackson admits that he did not exhaust his illegal sentence claim. The claim was raised in a motion filed on November 22, 2013. (Doc. 28, p. 46). The state court denied the claim, and Jackson states that he sought review in Louisiana's Third Circuit Court of Appeal, which denied writs on February 26, 2014 (No.: KH 14-0018). Jackson did not seek review in the Louisiana Supreme Court. (Doc. 28, p. 8). Ordinarily, a federal habeas petition that contains unexhausted claims is dismissed without prejudice, allowing the petitioner to return to the state forum to present his unexhausted claims. See Rose v. Lundy, 455 U.S. 509 (1982). However, the procedure would be futile in this case.

If Jackson sought to raise the illegal sentence claim through a fourth post-conviction application, it would be dismissed under State ex rel. Melinie v. State, 665 So.2d 1172 (La. 1996). In Melinie, the Louisiana Supreme Court, relying on Louisiana Code of Criminal Procedure article 930.3, ruled that claims of excessive sentence or errors in sentencing should be raised on direct appeal and are not proper grounds for

post-conviction relief. Likewise, a motion to reconsider sentence would be untimely, as it must be filed within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentencing. La. C.Cr. P. art. 881.1. Thus, state court relief is no longer available.

Although claims are considered to be "technically" exhausted when state relief is no longer available, without regard to whether the claims were actually exhausted by presentation to the state courts, Coleman v. Thompson, 501 U.S. 722, 731–33 (1991), if a petitioner "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would find the claims procedurally barred,'" then the claim is procedurally defaulted. Nobles v. Johnson, 127 F.3d 409, 420 (5th Cir.1997), cert. denied, 523 U.S. 1139 (1998) (quoting Coleman, 501 U.S. at 735 n.1). If a claim is procedurally defaulted, federal habeas review is generally barred.

Federal habeas review is barred in all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claims will result in a fundamental miscarriage of justice. See Lott V. Hargett, 80 F.3d 161, 164 (5th Cir. 1996). To show cause, Jackson must demonstrate that some outside factor prevented his efforts to comply with a state procedural rule. See Murray v. Carrier, 477 U.S. 478, 488 (1986).

Jackson's claim of illegal sentence was not exhausted and is now procedurally barred in the state court under Melinie and Louisiana Code of Criminal Procedure article 881.1. Jackson identifies no outside factor that prevented his efforts to comply with the state procedural rules, nor does he allege prejudice. Jackson was originally charged with aggravated rape, for which he faced life in prison. As a result of a plea bargain, he avoided a life sentence by pleading guilty to forcible rape. He received an agreed-upon sentence of 40 years. (Doc. 1, p. 192). Because Jackson received the bargained-for sentence, he cannot show prejudice.

Finally, Jackson cannot show that a fundamental miscarriage of justice would occur if this court fails to consider his defaulted claim. Jackson has not asserted actual innocence by showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478 (1986). Jackson has not made a "colorable showing of factual innocence." Callins v. Johnson, 89 F.3d 210, 213 (5th Cir. 1996), cert. denied, 519 U.S. 1017 (1996) (quoting McClesky v. Zant, 499 U.S. 467, 495 (1993)). Jackson's illegal sentence claim should be dismissed as procedurally defaulted.

### D. Ineffective Assistance of Counsel

An attorney's conduct is governed by the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984). There is a strong presumption that an attorney's conduct falls within the broad range of reasonable professional assistance required under the Sixth Amendment. See id. at 690. To overcome this presumption, a habeas petitioner must establish that the attorney's conduct was constitutionally deficient

(cause); and, but for such unprofessional errors, the result probably would have been different (prejudice). See id. In the context of guilty pleas, to satisfy the prejudice requirement, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Tracy v. Johnson, 226 F.3d 641 (5th Cir. 2000) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

Jackson claims that counsel was ineffective in failing to inform him of the requirement of registering as a sex offender. (Doc. 7, pp. 171-185; Doc. 1, p. 273). Sex offender registration and reporting requirements are collateral non-punitive consequences of a defendant's plea to the offense charged. See Moore v. Avoyelles Correctional Center, 253 F.3d 870 (5th Cir. 2001), cert. denied, 534 U.S. 1008 (2001); State ex rel. Olivier v. State, 779 So.2d 735 (La. 2001). An attorney does not render ineffective assistance under Strickland by failing to inform a defendant of collateral consequences to his plea of guilty. See Munday v. Lampert, 215 Fed. Appx. 593 (9th Cir. 2006); Gore v. Andrews, 99 F.3d 1149 (10th Cir. 1996) (the sex offender registration requirement is a collateral consequence of Defendant's plea, and counsel's failure to inform him of it cannot rise to the level of ineffective assistance); United States v. Banda, 1 F.3d 354, 356 (5th Cir. 1993); State v. Smith, 09-769 (La. App. 5 Cir. 3/9/10), 38 So. 3d 894, 899, writ denied, 2010-0843 (La. 11/5/10), 50 So. 3d 812 (failure to advise Defendant of the sex offender registration requirements did not render defendant's guilty plea involuntary).

Next, Jackson claims that his attorney was ineffective in failing to request a copy of the bill of particulars. Jackson has not alleged any prejudice from his attorney's failure to request a bill of particulars. First, "[t]he filing of pretrial motions falls squarely within the ambit of trial strategy." Murray v. Maggio, 736 F.2d 279, 283 (5th Cir. 1984); see also United States v. Lewis, 786 F.2d 1278, 1283 (5th Cir. 1986). The purpose of a bill of particulars is to inform defendant and defense counsel of the facts constituting the offenses charged so that they may be fairly informed, prepare defenses and perfect the record so as to bar subsequent prosecution. See Braden v. United States, 272 F.2d 653 (5th Cir. 1960). Jackson's indictment charges that he committed aggravated rape by engaging in vaginal sexual intercourse with a female child under the age of 13. (Doc. 1, p. 184). The particulars of the crime were evident, and the indictment notified Jackson of the charges against him. Jackson faced life imprisonment for the crime charged, but received an agreed-up sentence of 40 years based on a plea agreement. (Doc. 1, p. 188). Jackson has not shown a reasonable probability that, had he received a copy of a bill of particulars, he would not have pleaded guilty and would have insisted on going to trial.

Next, Jackson complains that counsel was deficient for failing to ensure that the plea agreement was read to Jackson and on the record. According to the transcript, the plea agreement was stated on the record in court as follows:

> Your Honor, the defense through Mr. Myles Johnson has tendered an offer to plead guilty to the reduced charge of Forcible Rape under R.S. 1:42.1 with a sentence of 40 years at hard labor with 2 years being without benefit of probation, parole or suspension of sentence, which is agreeable to the State with credit for time served. In addition, 162,070 charge of Molestation will be nolle prosque as part of the plea bargain.

12

(Doc. 1, p. 188). Additionally, the judge explained to Jackson the definition of "forcible rape," and advised Jackson of the mandatory life sentence for a conviction of aggravated rape. (Doc. 1, pp. 190-191). Jackson responded that he understood the charges and that he had a right to a trial by jury on the aggravated rape charge. (Doc. 1, p. 191-192). Jackson knew that he was going to receive a 40-year sentence pursuant to a plea agreement instead of facing the possibility of a life sentence. (Doc. 1, p. 192). The record does not support Jackson's claim that he was not apprised of the plea agreement or that the agreement was not read in court. (Doc. 1, pp. 188-195).

Jackson alleges that his attorney failed to inform the trial judge that Jackson did not understand the elements of the charge and had not understood the consequences of the plea. This claim fails as the record shows Jackson clearly understood the charges against him, and the consequences of his plea, and the risk of going to trial. (Doc. 1, p. 191-193).

Jackson alleges that counsel failed to file a motion to quash the indictment. As the trial court stated, the indictment was not defective in any manner. (Doc. 1, p. 169). Claiming that an attorney failed to file a motion to quash an indictment, without more, is insufficient to find that the attorney rendered ineffective assistance. Jackson has not shown the indictments to be invalid and does not demonstrate that such a motion would have been granted. Attorneys do not render deficient performance by failing to move to quash valid indictments. See Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994) (failure to raise meritless objection is not ineffective lawyering - it is the very opposite).

13

Jackson claims that his attorney failed to inform Jackson in advance of the crime to which Jackson would be pleading guilty. The transcript shows that Jackson talked with his attorney about his case "on several occasions." (Doc. 1, p. 190). Jackson acknowledged that he had been told that the aggravated rape charge would be reduced to forcible rape, and the sentence would be 40 years. (Doc. 1, pp. 192-193). The judge also asked Jackson: "What's going to happen after you plead guilty? What kind of deal did you make?" Jackson responded: "A sentence of 40 years." (Doc. 1, p. 192). Jackson acknowledged that, if he had been convicted of aggravated rape, he would have been sentenced to mandatory life imprisonment. (Doc. 1, p. 191). Thus, Jackson clearly understood the nature of the plea agreement and the negotiated sentence.

Jackson alleges that his attorney failed to allow Jackson to view the plea agreement. Jackson knew the agreed-upon sentence when questioned by the judge, so he had clearly been informed of the plea agreement. (Doc. 1, pp. 192-193). He also stated that he was satisfied with the plea agreement. (Doc. 1, p. 193). Moreover, Jackson has not alleged that, had he viewed the plea agreement, he would not have pleaded guilty and would have insisted on going to trial facing life imprisonment.

Jackson alleges that his attorney failed to disclose exculpatory evidence and request a pretrial hearing regarding the evidence. Assuming Jackson's allegation is true, there is no reasonable probability that, had the attorney disclosed the alleged "exculpatory evidence," Jackson would not have pleaded guilty and would have insisted on going to trial. Jackson has not shown whether the allegedly exculpatory

14

evidence would have been admissible at trial. Moreover, no pretrial hearing was necessary since there was no trial.

Jackson's claim that his attorney failed to inform Jackson of the facts of the crime and relevant law is without merit. As Jackson stated in court, Jackson met with his attorney on several occasions and Jackson understood the charges against him (Doc. 1, pp. 190-191). Jackson acknowledged that he understood that the State alleged that, between the months of June and September 2010, Jackson raped a child under the age of 13. (Doc. 1, p. 194). Jackson clearly knew the facts of the crime and relevant law.

Jackson alleges that his attorney failed to engage effectively in the adversarial process. Jackson provides no facts in support of this claim. His attorney met with him several times (Doc. 1, p. 191) and conducted adequate pretrial discovery (Doc. 28, p. 44). Jackson was facing life imprisonment for the charge of aggravated rape, and his attorney negotiated a plea for a lesser charge and sentence.

Jackson alleges that his attorney failed to suppress inconsistent statements by the victim. Because there was no trial, there was no reason to file a motion to suppress. Attorneys are "not required by the Sixth Amendment to file meritless motions." United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995).

Jackson claims that his attorney was ineffective in advising Jackson to enter a guilty plea to forcible rape. Jackson cannot establish that his counsel's advice fell below the range of competence demanded of an attorney in a criminal case. See Hill, 474 U.S. at 56; Armstead v. Scott, 37 F.3d 202, 206 (5th Cir. 1994). Jackson was facing

15

a life sentence for aggravated rape. He has not alleged, and cannot establish, that "but for his counsel's alleged erroneous advice, he would not have pleaded guilty but would have insisted upon going to trial." Hill, 474 U.S. at 59.

Jackson claims that his attorney failed to obtain the prosecutor's files in a timely manner. The record indicates that Jackson was arraigned on June 7, 2011. (Doc. 1, p. 198). On June 10, 2011, defense counsel filed a motion for discovery on Jackson's behalf. (Doc. 1, p. 198). A supplemental motion for discovery was filed on October 28, 2011. (Doc. 1, p. 198). The state responded on November 2, 2011. (Doc. 1, p. 199). Jackson has not provided support for his claim that discovery was not obtained timely. Also, Jackson has not alleged that, had the attorney obtained the files more promptly, Jackson would not have entered a guilty plea to the lesser charge, and would have gone to trial on the aggravated rape charge.

Jackson has provided insufficient facts to support his claims of ineffective assistance. "[C]onclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000), cert. denied, 531 U.S. 849 (2000). Jackson has not shown "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial" on the aggravated rape and molestation charges, facing life imprisonment. Hill, 474 U.S. at 59.

E. **Knowing and Voluntary Plea**

Jackson claims that his plea was not knowing and voluntary. A guilty plea must be a voluntary, knowing, and intelligent act done with sufficient awareness of

the relevant circumstances and likely consequences surrounding the plea. See Brady v. United States, 397 U.S. 742, 748 (1970). If a challenged guilty plea is knowing, voluntary, and intelligent, its validity must be upheld on federal habeas review. See James v. Cain, 56 F.3d 662, 666 (5th Cir. 1995). Although a petitioner's attestation of voluntariness at the time of the plea is not an absolute bar to later contrary contentions, it places a heavy burden upon him. See United States v. Diaz, 733 F.2d 371, 373-74 (5th Cir. 1979). The petitioner must show such a strong degree of misunderstanding, duress, or misrepresentation by the court, prosecutor, or his own counsel that his plea would become a constitutionally inadequate basis for imprisonment. See id. (citing Blackledge v. Allison, 431 U.S. 63, 75 (1977)).

The record of the plea proceeding in this case refutes Jackson's assertion that his plea was involuntary. To the contrary, the plea transcript establishes that Jackson understood and was aware of the consequences of his plea; that he was mentally competent; and that his plea was freely and voluntarily entered without promises, threats, or coercion. See Blackledge, 431 U.S. at 74; Kelley v. Alabama, 636 F.2d 1082, 1084 (5th Cir. 1981).

The transcript supplied by Jackson indicates that Jackson was allowed to plead to the lesser offense of forcible rape, and the charge of molestation of a juvenile was dismissed. Jackson was sentenced to an agreed-upon sentence of 40 years of imprisonment. (Doc. 1, pp. 192-195). The plea eliminated the possibility of the life sentence that would have been imposed upon a conviction of aggravated rape. (Doc. 1, p. 191).

The transcript reveals that Jackson was a district manager over a number of restaurants and stores in Chicago. He was also a welder, salesman, and pastor. (Doc. 1, p. 189). The transcript demonstrates that Jackson was made aware of the penalties for the crime of forcible rape and aggravated rape. (Doc. 1, p. 191). Jackson was advised of his constitutional rights to trial by jury, the presumption of innocence, the burden of proof beyond a reasonable doubt, the right to remain silent, the right to compulsory process, the right to confront and cross-examine witnesses, and the right to appeal. (Doc. 1, pp. 191-192). Jackson was advised that his guilty plea would result in the waiver his constitutional rights discussed. (Doc. 1, p. 192).

For federal habeas purposes, an individual understands the consequences of his plea if he understands the maximum sentence he may receive. See Hobbs v. Blackburn, 752 F.2d 1079, 1082 (5th Cir. 1985). The judge asked Jackson: "What's going to happen to you after you plead guilty? What kind of deal did you make?" Jackson responded: "A sentence of 40 years." (Doc. 1, p. 192).

Jackson further stated that he was satisfied with his plea agreement, and he had not been threatened or coerced to plead guilty. (Doc. 1, p. 192-193). Jackson acknowledged that he wished to plead guilty pursuant to the plea agreement. (Doc. 1, p. 194). The judge need not necessarily read the indictment or bill of information against the defendant to satisfy the requirement that defendant understand the nature of the charges against him. Jackson has the burden of proving that he is entitled to habeas relief on the ground that his guilty plea was involuntary. See

United States v. Smith, 844 F.2d 203, 208 (5th Cir. 1988). Jackson has not shown that his plea was not knowing and voluntary.

### III. Conclusion

For the foregoing reasons, IT IS RECOMMENDED that the stay be lifted and that the § 2254 petition be DENIED and DISMISSED with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be

taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. See 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

    THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this 28th day of September, 2016.

Joseph H.L. Perez-Montes
United States Magistrate Judge